DANIEL G. BOGDEN
United States Attorney for the
District of Nevada
ROGER W. WENTHE
Nevada Bar No. 8920
Assistant United States Attorney
333 Las Vegas Blvd. South, Rm. 5000
Las Vegas, Nevada  89101
Tele: (702) 388-6336
Fax: (702) 388-6787
Email: *roger.wenthe@usdoj.gov*

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GLORIA TAYLOR and ALFRED TAYLOR, ) <br> individually and as husband and wife, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:10-cv-00398-GMN-LRL |

**MOTION FOR DEFAULT JUDGMENT**

Pursuant to Fed. R. Civ. P. 55(b)(2) and the False Claims Act, 31 U.S.C. §§ 3729-3733, the United States respectfully moves for the entry of a default judgment against the Defendants, Gloria Taylor and Alfred Taylor.  This motion is supported by the accompanying Memorandum of Points and Authorities, the attached exhibits, and all papers on file.

DATED March 31, 2011.

Respectfully Submitted,

DANIEL G. BOGDEN
United States Attorney

 */s/*
ROGER W. WENTHE
Assistant United States Attorney

DANIEL G. BOGDEN
United States Attorney for the
District of Nevada
ROGER W. WENTHE
Nevada Bar No. 8920
Assistant United States Attorney
333 Las Vegas Blvd. South, Rm. 5000
Las Vegas, Nevada 89101
Tele: (702) 388-6336
Fax: (702) 388-6787
Email: *roger.wenthe@usdoj.gov*

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:10-cv-00398-GMN-LRL |
| ) | |
| v. ) | |
| ) | |
| GLORIA TAYLOR and ALFRED TAYLOR, ) | |
| individually and as husband and wife, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT**

Pursuant to Fed. R. Civ. P. 55(b)(2) and the False Claims Act, the United States respectfully requests the entry of a default judgment against the Defendants, Gloria Taylor and Alfred Taylor, consisting of treble damages in the amount of $118,394.10, plus civil penalties in accordance with the statutory mandate.

**I.   STATEMENT OF FACTS**

On March 23, 2010, the United States commenced this action alleging the Defendants presented false statements and claims to the government in order to receive $39,464.70 in housing assistance benefits to which they were not entitled, in violation of the 31 U.S.C. § 3729(a)(1)(2), part of the False Claims Act. (Docket No.1.)

2

On April 5, 2010, the Defendants, Gloria Taylor and Alfred Taylor, were personally served with the Summons and Complaint. (Docket Nos. 4 and 5.)  The Defendants were required to file an Answer or other responsive pleading with the Court within twenty-one (21) days of service of the Summons and Complaint. Fed. R. Civ. P. 12(a)(1)(A). Defendants failed to timely file an Answer.  On April 29, 2010, the Clerk of the Court entered a Default against the Defendants, Gloria Taylor and Alfred Taylor.  (Docket No. 7.)

**II.     ARGUMENT**

     **A.     The Legal Standard**

For purposes of a default judgment, the well-pled allegations of the complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987).  If the court determines that a defendant is in default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

When determining whether to grant default judgment, courts are instructed to consider the following factors: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect, and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *Area 55, Inc. v. Pandamerican LLC*, 2010 U.S. Dist. LEXIS 99247 (S.D. Cal. Sept. 10, 2010); *Rockstar, Inc. v. Rap Star 360 LLC*, 2010 U.S. Dist. LEXIS 82968 (D. Nev. July 6, 2010).

///

///

**B.     Default Judgment is Appropriate**

Each of the seven factors listed above supports the entry of default judgment for the United States in this case.

        1.     The United States' Claims Are Meritorious And The Complaint Is Legally Sufficient.

The Complaint establishes that from May 2002 through October 2008, the Taylors collected Section 8 Housing Choice Voucher Program benefits through the City of Las Vegas Housing Authority (LVHA) and the United States Department of Housing and Urban Development (HUD), by submitting application forms in which they knowingly failed to report their full income, including military benefits. (Docket No. 1, pars. 9-19.)

The Complaint seeks recovery from the Taylors in four claims.  The First and Second Claims assert violations of the Civil False Claims Act, the Third Claim asserts a common-law claim for payment by mistake, and the Fourth Claim asserts recovery under the common-law tort of unjust enrichment.

The First Claim is based on 31 U.S.C. § 3729(a)(1)[1], which provided:

> Any person who– knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 plus 3 times the amount of damages which the Government sustains because of the act of that person.

The complaint's factual allegations, which are taken as true following the defendants' default, establish that the Taylors knowingly presented claims for benefits which were materially false because they failed to disclose the Taylors' full income.  The applicant's true income is material to his entitlement to Section 8 benefits. *United States v. Ware,* 2010 WL 4683868 *2 (9th Cir. 2010) ("[Applicant's] false statements regarding her income were

---

[1] Since Defendants' actions occurred in 2002 through 2008, the Government's First and Second claims are based on the provisions of the False Claims Act prior to their amendment by the Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21.

1 material because Section 8 program benefits are calculated using the amount of income an
2 applicant discloses. An applicant's failure to accurately disclose income will affect the
3 computation of Section 8 program benefits and may result in an overpayment of benefits.")
4 The Taylors' false applications therefore violated the False Claims Act. *United States v.*
5 *Mackby,* 261 F.3d 821, 826 (9th Cir. 2001) (false claims for Medicare benefits based on
6 written forms containing materially false information violated Section 3729(a)(1)).

The Second Claim is based on 31 U.S.C. § 3729(a)(2), which provided:

> Any person who– knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 plus 3 times the amount of damages which the Government sustains because of the act of that person.

The complaint also establishes that the Taylors knowingly submitted application forms which failed to report all of their income, which were materially false statements knowingly made to get the Government to pay them benefits. *United States ex rel. Hendow v. University of Phoenix,* 461 F.3d 1166, 1173-74 (9th Cir. 2006) (submitting applications containing materially false information violates Section 3729(a)(2)).

The Third Claim is based on the common-law tort of Payment by Mistake. Under Nevada law, a contract may be rescinded if one party is under a unilateral mistake of fact and the other party had reason to know of, or his fault caused, the mistake. *Graber v. Comstock Bank,* 111 Nev. 1421, 1428, 905 P.2d 1112, 1116 (1995). The complaint establishes that the Government paid benefits to the Taylors under the mistaken belief that the Taylors had reported all their income, and that the Taylors cause that mistake by failing to report their full income. The complaint therefore establishes the tort of payment by mistake.

The Fourth Claim asserts the tort of unjust enrichment. In Nevada, the elements of unjust enrichment are the conferring a benefit on the defendant, the appreciation of the benefit by the defendant, and the retention of the benefit by defendant against principles of equity and good conscience. *Topaz Mut. Co., Inc. v. Marsh,* 108 Nev. 845, 856, 839 P.2d

606, 613 (1992). The complaint shows that the Taylors received benefits from the Government, appreciated them, and retained them despite the fact that they submitted false information to obtain them. This establishes the tort of unjust enrichment.

### 2. The Awardable Damages Are Reasonable.

The damages recoverable for the First and Second Claims are three times the amount of loss suffered by the Government, plus civil penalties of between $5,500 and $11,000 per false claim. *See* 28 CFR § 85.3(a)(9) (increasing False Claims Act civil penalties to these amounts). The Affidavit of Murray Stravers, attached hereto as Exhibit A, verifies that the single-dollar suffered by the Government as a result of the Taylors' actions is $39,464.70. Trebling this amount results in treble damages of $118,394.10.

The complaint alleges that the Taylors submitted eight separate claims for payment (Docket No. 1, pars. 11-18), so the Court must also award eight civil penalties of no less than $5,500 and no more than $11,000 each, under Section 3729(a)(1) or (a)(2). *United States v. Rogan,* 459 F. Supp. 2d 692, 727 (N. D. Ill. 2006) ("Though the imposition of civil penalties are mandatory, 31 U.S.C. § 3729, the court determines the amount of the penalty.") The range of permissible mandatory penalties is therefore no less than $44,000 and no more than $88,000.

The damages recoverable for the common-law torts asserted by the Government are simple compensatory damages. *Graber, supra,* 111 Nev. at 1428, 905 P.2d at 1116; *Topaz, supra,* 108 Nev. at 856, 839 P.2d at 613. Since the Government is entitled to only one recovery, the Government requests only one award of treble damages and civil penalties in this case.

Treble damages are reasonable in this case as a matter of law, because they are provided for by federal statute. The Court can also ensure that the civil penalties are reasonable by imposing an award, within the statutory constraints, that is appropriate for this case. *See United States v. Mackby*, 339 F.3d 1013, 1016-1019 (9th Cir. 2003).

1                     3.      <u>Plaintiff Will Be Prejudiced Without a Judgment.</u>

2       The Government would clearly be prejudiced if it were required to try this case rather

3 than receive a default judgment, since it would incur the additional expense and effort of

4 presenting evidence which is unnecessary because the allegations of the complaint have been

5 established by the Taylors' default.

6                     4.      <u>There Are No Possible Disputes of Material Fact.</u>

7       If default judgment were denied, there would be no issues of material fact. The

8 falsity of the Taylors' applications is apparent on their face, because the additional income

9 which they failed to report is also documented. The Taylors' default has, in any event,

10 rendered the allegations of the complaint conclusively established as a matter of law.

11                     5.      <u>Defendants' Default Was Not The Result of Excusable Neglect.</u>

12       The record shows that the Taylors were properly served with the complaint and failed

13 to answer it. (Docket No. 6.) As a result, there is no evidence of any excusable neglect in

14 their failure to answer.

15                     6.      <u>Public Policy Does Not Prevent Default Judgment.</u>

16       While cases should be decided on their merits when possible, the Taylors' failure to

17 file an answer makes a decision on the merits impractical, and default judgment is therefore

18 appropriate. *Rockstar, Inc., supra,* 2010 WL 2773588 at * 3.

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

### III. CONCLUSION

The Plaintiff requests the Court to enter a default judgment against Defendants, Gloria Taylor and Alfred Taylor, and to award $118,394.10 in treble damages, plus an appropriate amount of mandatory civil penalties between the statutory minimum of $44,000 and maximum of $88,000. A proposed Default Judgement accompanies this motion as Exhibit B.

DATED March 31, 2011.

                                              Respectfully Submitted,
                                              DANIEL G. BOGDEN
                                              United States Attorney

                                              */s/*
                                              ROGER W. WENTHE
                                              Assistant United States Attorney

# EXHIBIT A

# EXHIBIT A

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>GLORIA TAYLOR and ALFRED TAYLOR, individually and as husband and wife,<br><br>        Defendants. | Case No.: 2:10-cv-00398-RCJ-LRL |

### **DECLARATION OF MURRAY J. STRAVERS**

1. I, Murray J. Stravers, am employed as a n Investigator/Special Agent for the United States Department of Housing and Urban Development (HUD), Office of Inspector General (OIG).

2. In my capacity as an Investigator/Special Agent for the HUD-OIG, I was assigned the case of the above-listed Defendants, Gloria Taylor and Alfred Taylor. I am familiar with the facts and circumstances underlying the Complaint, which involves the Defendants receiving fraudulent funds for housing assistance from HUD.

3. Between April 2002 and February 2008, the Defendants provided documents and statements to HUD that the Defendants knew contained false information in order to obtain Section 8 housing assistance from HUD to which the Defendants were not entitled in the amount of $39,464.70.

4. The Defendants submitted false documents and statements on at least eight (8) separate occasions, between April 2002 and February 2008, to obtain the Section 8 housing assistance funds from HUD to which the Defendants were not entitled in violation of the False Claims Act.

a.  On or about April 10, 2002, the Defendants submitted an "Application For Continued Occupancy" to the government in which the Defendants knowingly omitted income received from military benefits.

b.  On or about January 28, 2003, the Defendants submitted an "Application For Continued Occupancy" to the government, in which the Defendants knowingly omitted income received from military benefits.

c.  On or about January 27, 2004, the Defendants submitted a "Continued Occupancy Form" to the government in which the Defendants knowingly omitted income received from military benefits.

d.  On or about January 18, 2005, the Defendants submitted a "Continued Occupancy Form" to the government in which the Defendants knowingly omitted income received from military benefits.

e.  On or about January 13, 2006, the Defendants submitted a "Continued Occupancy Form" to the government in which the Defendants knowingly omitted income received from military benefits.

f.  On or about June 12, 2006, the Defendants submitted a "Continued Occupancy Form" to the government in which the Defendants knowingly omitted income received from military benefits.

g.  On or about February 7, 2007, the Defendants submitted a "Continued Occupancy Form" to the government in which the Defendants knowingly omitted income received from military benefits.

h.  On or about February 18, 2008, the Defendants submitted a "Continued Occupancy Form" to the government in which the Defendants knowingly omitted income received from military benefits.

5.  On March 19, 2008, the Defense Finance and Accounting Service (DFAS) certified, in writing, that Alfred Taylor was receiving a monthly military pension in the

amount of $1,987,00 and that Alfred Taylor had been receiving a monthly military pension since December 1, 1976.

6. The unreported income from 2002 through 2008 amounts to $131,548.99.

7. Actual damages due to HUD are $39,464.70, which is the amount of fraudulent housing assistance payments obtained by the Defendants and to which they were not entitled.

8. Treble damages are $118,394.10.

9. If called upon, I would testify to the matters contained in the Complaint and this declaration.

Pursuant to 28 U.S.C. 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of March, 2011.

Murray J. Stravers
Investigator/Special Agent
U.S. Dept. of Housing and Urban Development
Office of Inspector General

3

# EXHIBIT B

# EXHIBIT B

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GLORIA TAYLOR and ALFRED TAYLOR, ) <br> individually as husband and wife, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:10-cv-00398-RCJ-LRL |

**DEFAULT JUDGMENT**

This cause coming on to be heard on the Plaintiff's Motion for Default Judgment, the Court being fully advised in the premises,

IT IS HEREBY ORDERED:

1. Default judgment is hereby entered in favor of the Plaintiff and against Defendants Gloria Taylor and Alfred Taylor jointly and severally; and

2. Damages are awarded to the Plaintiff as follows:

| | |
|---|---|
| Treble damages | $118,394.10 |
| Civil Penalties | $_____ |
| Total | $_____ |

Dated: _____

_____
UNITED STATES DISTRICT JUDGE

11